DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal from the September 4, 2002 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights and awarded permanent custody of Devin B. to Lucas County Children Services ("LCCS").
 {¶ 2} Appellant, Nickole C., is the natural mother of Devin B., born August 12, 2000. On August 18, 2000, LCCS filed a complaint in dependency and motion for shelter care hearing.[1] The complaint alleged that the obstetric nurses had concerns regarding appellant's ability to care for Devin. Specifically, the nurses reported that appellant rocked him inappropriately and covered his mouth with her hand telling him to "shut up." The complaint further alleged that appellant was homeless and intellectually low functioning and had prior involvement with LCCS relating to her daughter.
 {¶ 3} On September 21, 2000, temporary custody of Devin was awarded to his great-aunt, Kathy B. A case plan was prepared which, as to appellant, set as goals the securement of stable housing, participation in parenting classes and a diagnostic assessment of appellant followed by the recommended treatment.[2] Further, Michelle Gregory was appointed as Devin's guardian ad litem.
 {¶ 4} On February 27, 2002, temporary custody of Devin was awarded to LCCS. LCCS filed a motion for permanent custody on March 19, 2002. In its motion, LCCS stated that while appellant had been compliant with attending various services, she had made no progress in remedying the problems which caused her children to be removed from her care. The motion indicated that appellant had made several impulsive decisions regarding relationships and had been engaged to and lived with several different men in a short period of time. The motion also stated that appellant still had no stable housing. Finally, LCCS indicated that Devin had been with his great-aunt for fifteen months and that she was interested in adopting him.
 {¶ 5} A hearing was held on the motion on August 13 and 14, 2002, and the following testimony was presented. Shelly Falkenberg, coordinator for the St. Vincent Mercy Care Center's parenting program, testified that during the 42 interactive sessions, appellant had trouble managing both Devin and Keri. Appellant also brought her husband at the time to some of the sessions. Falkenberg testified that appellant would push Keri to go to the husband and then get angry when she did go to him.
 {¶ 6} Falkenberg testified that appellant was very rigid with the children and very inconsistent in her response to them. She stated that appellant was too preoccupied with her own life to pay attention to her children. Falkenberg expressed that she felt appellant had made minimal progress over the course of the sessions.
 {¶ 7} Jennifer Rico, of the Aurora Gonzalez Community Outreach Center, testified that she began counseling appellant in October 2001. Through contacts with LCCS, Rico was able to formulate treatment goals for Nickole. Rico testified that every aspect of appellant's life lacked stability. Her relationships were changing frequently as was her housing. Rico testified that during the four-month period of treatment, appellant was involved with at least three different men. Appellant missed several appointments and eventually requested to terminate her counseling with Rico. Rico stated that appellant made minimal progress during her contact with her.
 {¶ 8} In June 2002, appellant obtained a diagnostic assessment at Harbor Behavioral Healthcare. The assessment was performed by Susan Hudson, a social worker licensed to perform such assessments. Hudson testified that during the interview, appellant disclosed to her that she had been sexually abused by her father but that she had dealt with the issue and refused to discuss the details. Appellant also indicated to Hudson that she had taken Paxil, an anti-anxiety medication, but had discontinued its use on her own claiming that medication did not work. Hudson testified that appellant appeared very anxious.
 {¶ 9} Hudson diagnosed appellant with histrionic personality disorder and a mood disorder, NOS (not otherwise specified). Hudson described histrionic personality disorder as pervasive and excessive emotionality and attention-seeking behavior. Hudson stated that the illnesses fall under the Severe Persistent Mental Illness categorization and will likely persist for at least one year.
 {¶ 10} Ann Evans, also of Harbor Behavioral Healthcare, testified next. Evans testified that appellant had attended her women's issues group for the preceding four Thursdays. Evans stated that appellant had not completed her first assignment which was to identify the abuses she had experienced in her life. Later, appellant did complete the assignment but was not comfortable sharing it with the group. Evans testified that appellant felt she was a private person and she had difficultly talking and sharing with the group. Evans concluded that appellant had not made any progress in the group because she would not participate.
 {¶ 11} Kathy B., Devin's great-aunt, testified that Devin was placed with her when he was five days old. Kathy stated that if the court awarded LCCS permanent custody she would be willing to adopt Devin.
 {¶ 12} Kathy also stated that during the time she has had custody of Devin, appellant has been involved with approximately 20 different men. Appellant also lived with the majority of the men. Evans further indicated that in the last two years appellant had been engaged six times.
 {¶ 13} The guardian ad litem, Michelle Lynn Gregory, testified that she has been actively involved with the case since August 2000. Gregory stated that appellant and Devin did not have a strong bond. Gregory also expressed concerns regarding the number of relationships appellant had been in since Gregory's involvement, 17 different men, and the number of places she had lived, 20. Gregory recommended that permanent custody be awarded to LCCS.
 {¶ 14} The LCCS caseworker of record, Susan Mills, summarized the concerns that were initially identified as appellant's need for stable housing and to provide food and clothing for Devin. Counseling and parenting sessions were recommended. Mills stated that appellant was not successful in obtaining any of the set goals.
 {¶ 15} Mills also expressed concern regarding several of the men appellant had dated who had previous involvement with LCCS. Mills stated that one lost his children due to neglect, one was sexually involved with a 13 year old, one physically abused a two-month old, and two had been perpetrators of sexual abuse involving children.
 {¶ 16} Regarding Devin's current placement, Mills stated that Devin was comfortable there and had bonded with his aunt. Mills stated that she felt it would be in Devin's best interest to be adopted by his aunt.
 {¶ 17} The guardian ad litem, Michelle Gregory, presented one witness, Chad. C. Chad testified that he is the father of Keri, appellant's daughter. Chad testified that he did not feel that appellant should have custody of Devin because "[s]he doesn't pay enough attention to him or where he's at or what he's doing."
 {¶ 18} In addition to her own testimony, appellant called James Richards, Tara White, James Schroyer, and Michelle Kermec to testify on her behalf. James Richards testified that he had known appellant for four or five years and that they had never been romantically involved. Richards testified that appellant had a good relationship with her daughter and provided her with plenty of clothing and toys. Richards acknowledged that appellant had made some poor relationship choices in the past but that she is now doing better. He stated that she had purchased a mobile home and currently has a stable job driving a cab.
 {¶ 19} Tara White testified that she has known appellant for approximately eight months and that appellant currently lives with her, her fiance and son. White stated that she encouraged appellant to buy the trailer and that many of the walls and floors, among other things, need to be replaced before it is habitable.
 {¶ 20} Appellant's boss, James Schroyer, testified that appellant had been working for him for approximately three and one-half months. He indicated that appellant is a good worker, conscientious and takes good care of the car.
 {¶ 21} Michelle Kermec, of Harbor Behavioral Healthcare, testified that appellant attended her parenting classes which were held at the Aurora Gonzalez Center. Appellant successfully completed the eight session class and appeared to understand what was being taught. Kermec did acknowledge that appellant missed two or three consecutive classes but that she made them up.
 {¶ 22} Appellant testified that she had lived in so many different places because of bad decisions she had made but that she now owned a trailer and had steady income. Appellant purchased the trailer for $150 and described it as needing some work. She admitted that walls, floors, and windows need to be replaced. Appellant stated that her friends are helping her do the repair work and that it could be made habitable in about a week. Regarding work, appellant testified that she was employed at the cab company and had also started work at a restaurant as a cook and busser.
 {¶ 23} Appellant indicated that she had been having difficulties in her women's group because she had trouble opening up to groups of people. She felt it would get easier as the group progressed. Appellant stated that she refused to take medication or be assessed for medications for depression because the drug she had been taking made her very tired. She stated that the only reason for her depression was that her children were taken away.
 {¶ 24} According to appellant, in the two weeks preceding the hearing she had undergone a major life change. Appellant stated that she planned to abstain from any romantic relationships with men for a long time.
 {¶ 25} In its September 4, 2002 judgment entry, the trial court granted permanent custody of Devin to LCCS. The court found that pursuant to R.C. 2151.414(E)(1), appellant failed to remedy the conditions which caused Devin to be placed outside the home. The court further found the following: that appellant had demonstrated a lack of commitment toward Devin by "failing to engage in case plan services in any meaningful way," R.C. 2151.414(E)(4); that appellant's mental illness is so severe that she is unable to provide an adequate permanent home at present and, as anticipated, within one year after the hearing, R.C. 2151.414(E)(2); that appellant is unwilling to provide food, clothing, and shelter to prevent the child from suffering abuse or neglect, R.C. 2151.414(E)(8); and the fact that appellant demonstrated poor judgment with multiple sexual partners, including child abuse perpetrators, and her lack of housing and stable employment. The court further found that LCCS had made reasonable efforts to prevent the removal of Devin from appellant's care. It is from this judgment that appellant now appeals.
 {¶ 26} Appellant raises the following three assignments of error:
 {¶ 27} "I. The trial court abused its discretion in finding that LCCS made reasonable and good faith efforts to prevent the continued removal of Devin B[.] from appellant's custody when LCCS did not make a reasonable and good faith effort to diagnose and proscribe a case plan service to treat her alleged personality disorder.
 {¶ 28} "II. The trial court abused its discretion in finding that appellant failed continuously and repeatedly to substantially remedy the conditions which caused Devin B[.] to be placed outside of her custody and to engage in case plan services in a meaningful way when LCCS failed to properly diagnose and proscribe treatment for her alleged personality disorder.
 {¶ 29} "III. The trial court abused its discretion in finding appellant's emotional illness so severe that it makes her unable to provide an adequate permanent home for Devin B[.], as anticipated, within one year after the trial court holds its hearing pursuant to ORC 2151.353."
 {¶ 30} Appellant's assignments of error are closely aligned and will be discussed together. Appellant contends that LCCS failed to make a reasonable and good faith effort to properly diagnose and proscribe a case plan to treat appellant's alleged personality disorder. Further, as a result of said failure, the trial court erred in finding that appellant failed to remedy the conditions which caused Devin to be removed from her custody and erred in finding that appellant's alleged personality disorder was so severe that it could not be remedied within one year.
 {¶ 31} R.C. 2151.414(E) requires that the trial court find that the child cannot or should not be placed with either of his parents within a reasonable time once the court determines by clear and convincing evidence that one or more of the enumerated factors exists. Once the court determines that one of the enumerated factors exists, then it must consider whether permanent commitment is in the best interest of the child. R.C. 2151.414(D). Only after such findings may the court grant permanent custody of the child to the agency.
 {¶ 32} On appeal, a reviewing court must determine whether the trial court's finding were supported by clear and convincing evidence. Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven. In re Stacey S. (1999), 136 Ohio App.3d 503, 520.
 {¶ 33} As to the mental health services offered by LCCS, the transcript of the August 2002 hearing reveals that appellant received counseling services at Unison early on in the case. Appellant again began counseling in October 2001, but stopped attending in February 2002, because she did not care for the counselor.
 {¶ 34} In June 2002, appellant went to Harbor Behavioral Healthcare and a diagnostic assessment was performed by Susan Hudson, a social worker licensed to perform such assessments. During the interview, appellant refused to discuss past sexual abuse perpetrated by her father. Hudson diagnosed her with histrionic personality disorder and a nonspecific mood disorder. Hudson stated that after making the assessment she referred appellant to Ann Evans, also of Harbor, in order to begin group therapy which, as stated by Hudson, is generally the best form of therapy for a personality disorder. The transcript reveals that appellant did not participate well in group therapy.
 {¶ 35} In the recent past, appellant had been prescribed an anti-anxiety medication which she discontinued using on her own. Appellant acknowledged that, at Harbor, she refused to be checked or assessed in order to take medication for depression because it made her very tired and she felt that the only reason she was depressed was because LCCS had taken her children away. Appellant also indicated that she does not believe that she would benefit from individual counseling and disagreed that she still needed to address her past sexual abuse and current anger management issues.
 {¶ 36} Based upon the foregoing, and after careful review of the record in this case, the court finds that there was clear and convincing evidence to support the trial court's finding that LCCS made reasonable efforts to make available the services necessary to treat appellant's alleged personality disorder. Further, because the services were made available and not fully or properly utilized, we find that appellant did, in fact, fail to remedy the conditions which caused Devin to be placed outside her custody. Thus, the trial court did not err in so finding.
 {¶ 37} Finally, as to the diagnosis of appellant's personality disorder, appellant argues that the absence of a psychiatrist or psychologist report precludes the court's finding that appellant's "emotional illness is so severe that it makes her unable to provide an adequate permanent home" for Devin. Supporting her argument, appellant cites this court's case captioned In the Matter of: Charnina J.
(Feburary. 25, 2000), 6th Dist. No. L-99-1250. In Charnina, we found that the court's finding that the appellant suffered a "chronic mental illness" was in error. The only evidence presented was "lay testimony" which suggested that appellant had a nervous breakdown in the past, was depressed, and had anger management issues.
 {¶ 38} In the case sub judice, unlike Charnina, we previously noted that Susan Hudson, the individual who performed the diagnostic assessment, was qualified to make such assessments. She was also qualified by the court as an expert in social work as well as diagnostic assessments. Hudson testified that appellant's disorder falls into the severe persistent mental illness category and that such illnesses generally persist for at least one year. Based on such testimony, we find that clear and convincing evidence exists to support the trial court's finding that appellant's illness prevents her from providing an adequate permanent home for Devin at present and, as anticipated, for at least one year.
 {¶ 39} Accordingly, we find that appellant's three assignments of error are not well-taken.
 {¶ 40} On consideration whereof, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Mark L.Pietrykowski, J., CONCUR.
[1] The complaint also named appellant's daughter, Keri C., born December 2, 1997. The case as to Keri concluded with permanent custody being awarded to her natural father, Chad C. This appeal relates only to the termination of appellant's parental rights and award of permanent custody to LCCS of Devin.
[2] The case plan also included genetic testing for the putative father of Devin. Testing of this and another individual failed to establish paternity. A third putative father was never located.